UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ERIC ARQUES EVANS,<br><br>　　　　　Defendant. | Case No. 18-cr-00308-WHO-1<br><br>**ORDER GRANTING COMPASSIONATE RELIEF** |

　　　　Defendant Eric Evans has filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. No. 28. He cites three reasons that, in combination, are extraordinary and compelling and make him eligible for compassionate release. The first is that he suffered a series of seizures on May 2, 2020 at FCI Sheridan that have seriously interfered with his ability to take care of himself. The second is the COVID-19 pandemic, which has hit prisons particularly hard. His inability to take care of himself means that he is at greater risk to catch the virus. And as an African-American, he argues that he is at heightened risk during the pandemic. Third, when I sentenced him on January 24, 2020 to 30 months imprisonment, the Presentence Report on which I relied stated that his time in federal custody would start as of July 30, 2018, giving him a release date in September, 2020 with good time credit; the Bureau of Prisons, however, calculated his time in federal custody to start more than 16 months later, on December 13, 2019, leaving him with a release date in January, 2022. Evans asks that he be allowed to reside with his girlfriend, Wilnieka Butler, in Fairfield, California.

　　　　The government opposes relief. It argues that Evans's condition is manageable and has improved, that FCI Sheridan is attending it appropriately, that the Bureau of Prisons, not the court, determines when a defendant's time in federal custody begins, and that Evans would be a danger if

released early.

I may grant Evans's motion for release only if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The phrase "extraordinary and compelling reasons" has been defined by the United States Sentencing Commission in the application notes to U.S.S.G. § 1B1.13. There are five circumstances that qualify as "extraordinary and compelling reasons" to grant compassionate release.

The first two relate to the defendant's medical condition. The "extraordinary and compelling reasons" standard is satisfied if "[t]he defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)." U.S.S.G. § 1B1.13 cmt. n.1(A)(i). It is also satisfied by "a serious physical or medical condition, . . . serious functional or cognitive impairment, or . . . deteriorating physical or mental health because of the aging process . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id*. § 1B1.13 cmt. n.1(A)(ii).

A defendant's age qualifies as a third extraordinary and compelling reason if "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id*. § 1B1.13 cmt. n.1(B). Family circumstances requiring the defendant to care for minor children or a spouse or registered partner are a fourth qualifying reason. *Id*. § 1B1.13 cmt. n.1(C). The fifth, a catch-all, provides for relief when "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id*. § 1B1.13 cmt. n.1(D).

I heard argument on Evans's motion on June 11, 2020, and kept the record open so that I could review any pertinent medical records. Having reviewed the recent medical records and all of the papers filed concerning this motion, I conclude that it is appropriate to grant the requested relief.

First, Evans suffered a series of seizures on May 2, 2020, and fell from the top bunk on his head, leaving him with serious difficulties caring for himself.  While the evidence is somewhat mixed, Evans clearly has a serious condition that has had a substantial impact on him.  His cellmate has had to take care of him.  Evans needs assistance getting dressed, obtaining food and walking down the hall.  He cannot type into the Corrlinks email system by himself.   He has had trouble communicating effectively.  While his seizure disorder predated his arrival at FCI Sheridan, it had been controlled by medication prior to May 2nd.  It is unknown why Evans suffered the seizures on May 2, 2020; Evans cites evidence that COVID-19 can increase seizures in those with epilepsy.  That said, the government points out that an MRI on July 2, 2020 did not show a reason for heightened concern; the medical records show that his condition has improved since May and that a follow up appointment with a neurologist has been scheduled for the end of August 2020.

Second, Evans's difficulty in caring for himself is a particular worry in the midst of the COVID-19 pandemic.  While he is fortunate to have a caring and competent cellmate to help him now, there is no guarantee that this will remain the case.  This problem, coupled with his seizure disorder, the pandemic itself and its impact on African Americans, who are at heightened risk from COVID-19, create a heightened risk for Evans.

Finally, in considering Evans's situation I am also confronted with my incorrect expectation when I sentenced Evans that his continuously served federal time would start as of July 30, 2018, not December 13, 2019.  I do not dispute the BOP's calculation of that time, and I do not have authority to adjust that calculation in any event.  But the difference adds to the extraordinary nature of these circumstances; when I sentenced Evans, I assumed that with good time he would have been returned to the Bay Area by September 2020, with a likely halfway house placement six months earlier.  He would not be facing an additional sixteen months in prison where his chances of catching COVID-19 are certainly higher than if he is at home (where,

3

with assistance from Probation, he should be able to better access care for his seizures, as well as his physical and mental health).

In determining this motion, I also consider the factors set out in 18 U.S.C. § 3553(a). This is a simple task in this case; in January, I considered these factors, including the offense, his criminal history, his strong relationship with his family and the mother of his youngest child and her five year old daughter, and other matters. I recognized that he had been in custody since July 30, 2018 and I imposed a sentence of 30 months, which would have allowed him to be released by September 2020 if he got credit for all of his time in custody, as Probation and I thought would occur. Granting this motion is consistent with what I assumed would happen in January. Consideration of the § 3553(a) factors supports my decision.

Accordingly, I will GRANT Evans's motion for compassionate release as follows:

☐ The defendant's previously imposed sentence of imprisonment of 30 months is reduced to time served;

☐ This order is stayed for up to fourteen days, for the verification of the defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure the defendant's safe release. The defendant shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, or if there any ambiguities in this Order identified by Probation or the parties, the parties shall immediately notify the court and show cause on July 23, 2020 at 1:30 p.m. why the stay should be extended or the Order clarified.

☐ The defendant must provide the complete address where the defendant will reside upon release to the probation office in the district where he will be released because it was not included in the motion for sentence reduction.

☐ The first six months following the defendant's release shall be spent in home detention

4

or, if the defendant's proposed residence is not suitable, at a halfway house at the discretion of the probation officer. The defendant must participate in the Location Monitoring Program as directed by the probation officer for a period of 180 days and be monitored by Location monitoring technology at the discretion of the probation officer. Location monitoring must be utilized to verify his compliance with home detention while on the program. Defendant is restricted to his residence at all times except for employment, education, religious services, medical appointments, substance abuse or mental health treatment, attorney visits, court appearances, court-ordered obligations, or other activities pre-approved by the probation officer. Defendant must pay all or part of the costs of the program based upon his ability to pay as determined by the probation officer. The defendant's previously imposed conditions of supervised release shall remain unchanged, except as modified above during the first six months of his release.

**IT IS SO ORDERED.**

Dated: July 14, 2020

William H. Orrick
United States District Judge